VIRGIL H. CRISMAN et al., appellants,

v.

SAMUEL SMITH, administrator of JAMES ROE, respondent.

Various persons make voluntary contributions to a fund "for the purpose of placing the Sussex railroad extension from Newton to Branchville in the hands and under the control of the Susssex Railroad Company, free and clear of all encumbrance."—*Held*, that a party, who had previously conveyed to the company a right of way across his land for the extension, without retaining any claim against the company or any lien upon the land for the purchase money, was not entitled to call the treasurer of the fund to an account, in order that the fund might be applied to the payment of the price. Such a payment is not within the scope of the designated purpose.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

A very careful examination of the testimony in this case has not enabled me to charge the railroad company with the amount still due O. P. Armstrong. The first step in the transaction was the sale by Armstrong of the right of way to James Roe and William H. Bell—the title being conveyed by him to the Sussex Railroad Company, and the deed delivered to Bell. There is no evidence that shows any authority from the company for this. I am unable to perceive any legal method by which the company can be bound. At no time could an action have been maintained for the purchase-money, nor could a bill for specific performance have been successfully pressed. There does not appear to have been the slightest business relations between Armstrong and the company.

It certainly will not do to say that the company is under obligations to Armstrong, because he consented to execute a title for a portion of his land to the company when the company had no voice or agency in the matter, and when the deed was not delivered to it nor to its agent. The law does not permit owners to select grantees at pleasure. Nor do I understand that the

Crisman v. Smith.

company did anything afterwards that can by any construction amount to a ratification of what Bell and Roe did, so as to compel it to pay for the land.

Indeed, as I understand the case, all the negotiations of the parties interested in procuring the extension spoken of in the bill, were carried on exclusive of the company with respect to very many important matters—matters essential to the extension —amongst which was the title to the Armstrong land. And when other efforts proved insufficient to remove all the difficulties in the way of an acceptance of the road and completion of the same by the company, a number of those persons interested joined in a subscription to raise at least $3,500; one of the purposes thereof being " to place the Sussex Railroad extension from Newton to Branchville in the hands and under the control of the Sussex Railroad Company, free and clear from all encumbrances." This subscription was signed by Roe and Armstrong. The promise was to pay the money to Crisman, one of the defendants. Roe and Armstrong signing that agreement shows conclusively that they did not expect a lien to be continued, if there had been one, for the purchase-money of the Armstrong land.

I think the complainant has failed to show any liability on the part of the Sussex Railroad Company, and as to it I think the bill should be dismissed with costs.

Crisman was made the agent of the subscribers to said agreement, and authorized to collect all the moneys subscribed. This he undertook to do.

One of the prayers of the complainant is that Crisman shall account for all moneys received by him under said subscription, and for interest and profits, and also for all moneys which by negligence he failed to collect.

Another prayer is that an account may be taken of the moneys paid by James Roe in his lifetime, and by the complainant since the death of Roe to Armstrong on account of his claim.

It has been objected that the complainant has no standing in this court as against Crisman and the other defendants. This I cannot assent to. The statement that shows the equity is:

first, Roe was, and perhaps still is, liable to Armstrong for the unpaid purchase-money; yet, when the whole transaction is presented, it is apparent that Roe and Bell were acting in the interests of certain citizens, many of whom afterward signed the subscription, and were their agents; and secondly, those citizens mutually bound themselves by the subscription to pay all liens to the extent of $3,500, which amount was beyond dispute applicable to the Armstrong claim. True, Armstrong may have retained his claim against Bell and Roe. That is not the question. Certain it is to my mind that, when Roe and Armstrong joined with the others in the subscription, an equity arose in favor of Armstrong. Crisman accepted the agency for the collection of the moneys subscribed; and James Roe remained personally liable for the consideration-money to Armstrong. And the persons who subscribed became liable, as above stated—first, to Crisman the agent, whom they mutually appointed; secondly, to Roe, if he should pay as surety; and thirdly, to Armstrong, in case both Crisman and Roe failed to discharge their duty. This is the complication which I think warrants the aid of this court in adjusting all in one suit.

It seems to me, therefore, that the money which the persons subscribed should be first applied to the discharge of the Armstrong claim, so far as it has not been disbursed for any other legitimate purpose. The complainant has a right to demand this. That he might discharge the whole claim of Armstrong and then look to Crisman, does not render his present claim untenable. The one is not inconsistent with the other.

I conclude that Crisman is to account for all the moneys he received on the subscription, or that he might have received by proper diligence. This rule will charge him with the William Mattison, John G. Hancy and N. K. Bray subscriptions. He is also liable to account for interest on all moneys received, so far as the same were invested or used by him, and for all profits on sales of stock growing out of the same transaction. Out of these moneys Armstrong shall first be paid, and then Smith, as administrator.

I will advise a decree in accordance with these views. And

Crisman v. Smith.

as to the other defendants, represented by Mr. Thompson, I am quite clear that the bill should be dismissed.

*Mr. Joseph Coult*, for appellants.

*Mr. Charles J. Roe*, for respondent.

The opinion of the court was delivered by

DIXON, J.

Virgil H. Crisman appeals from a decree of the chancellor by which he is ordered to account to James Roe's administrator for the moneys received, or which ought to have been collected by him, upon a voluntary subscription made by various persons, in the following words:

"We, the subscribers hereto, agree to pay to Virgil H. Crisman, who is hereby appointed our agent to collect and receive the subscriptions hereon, the sums by us respectively subscribed and set opposite our names, on demand, said sums being payable either in money or notes at the bank, payable in three months after date, which notes and money are to be used for the following purpose and no other: To place the Sussex Railroad extension from Newton to Branchville in the hands and under the control of the Sussex Railroad Company, free and clear of all incumbrance, with the agreement and promise on the part of said company that they will at once complete said road and operate the same to the village of Branchville, and will issue stock of said company to the subscribers therefor and persons entitled thereto to the amount of $125,000.

"This subscription not to be binding unless the sum of $3,500 be hereto subscribed by responsible persons.

"*Branchville, April 27th, 1870.*"

The administrator's claim to the account is based upon the assertion that the object of the subscription included the payment to Obadiah P. Armstrong of a debt due to him for land over which the railroad extension ran; that Roe was a surety for the debt and paid part of it, and therefore his administrator is entitled to insist that the fund subscribed shall be applied to exonerate his estate from responsibility for the residue of the debt, and to re-imburse the estate for what Roe paid.

The foundation of the claim is, that the payment of the debt to Armstrong is embraced in the object of the subscription.

This object is, in the writing subscribed, explicitly stated to be "for the following purpose and no other: to place the Sussex railroad extension from Newton to Branchville in the hands and under the control of the Sussex Railroad Company, free and clear of all encumbrance." This statement affords conclusive evidence of the object of the subscribers, and the authority and duty of Crisman were to apply the funds to this object solely, and if they were not all needed for that purpose, to restore the surplus to the subscribers in proportion to their contributions. *Abels* v. *McKeen, 3 C. E. Gr. 462.*

We must, therefore, first determine whether the payment to Armstrong was proper for the accomplishment of the object stated.

At the date of the subscription, the pertinent facts, as we gather them from the rather unsatisfactorily printed case, were these: In 1866, the residents of Branchville desired to have the Sussex railroad extended from Newton to that village, and the Sussex Railroad Company had intimated its willingness, in case the entire right of way was secured free of encumbrance, and the road-bed was graded, to accept a conveyance thereof and issue a certain amount of its stock therefor, and then to complete and operate the extension. In order to carry out this scheme, William H. Bell and James Roe made an arrangement with Armstrong, over whose land the proposed extension would lie, by which Armstrong executed and delivered to Bell a deed purporting to convey to the Sussex Railroad Company, in fee, the right of way over his land, and Bell and Roe signed and gave to Armstrong a writing as follows:

"Memorandum of Agreement between Obadiah P. Armstrong and the Sussex Railroad Company.

"Whereas, the said Obadiah P. Armstrong this day conveyed by deed the right of way for the extension of the Sussex railroad from Newton to Branchville across his lands; therefore, the Sussex Railroad Company agrees to pay the said Obadiah P. Armstrong, in consideration for said conveyance, the sum of three thousand dollars on or before the 1st day of June, 1867.

"WILLIAM H. BELL, }
"JAMES ROE,         }  *Committee.*

"*Lafayette, October 11th, 1866.*"

The Sussex Railroad Company had not authorized Bell or Roe to enter into this arrangement on its behalf, nor does it appear ever to have ratified or known of the same. Armstrong, at the time, had, or soon afterwards acquired, an understanding of the true position occupied by the company and by Bell and Roe, but, nevertheless, permitted his deed to remain in the hands of Bell, expecting that it would be delivered to the company in furtherance of the proposed scheme, and resting content with the personal obligation insured by Bell and Roe, by their executing, without authority from the company, the memorandum above recited. This posture of the affair continued until about April 8th, 1870, when the Armstrong deed was delivered by Bell to the company, and recorded, upon the understanding that the company should issue its stock and complete and operate the extension. This understanding was afterwards fulfilled. Armstrong has never claimed to hold the company responsible for the debt or to have any lien upon the land therefor.

The legitimate inference from these circumstances is, that Armstrong empowered Bell to deliver to the company the deed which he had executed for the purpose of conveying to the company the right of way, clear of all encumbrances, and accepted as full satisfaction for the purchase-money the personal obligation of Bell and Roe, and that when such delivery was made the title was vested in the company, free from any lien of the grantor. Such was the decision of the Vice-Chancellor in this cause, and no appeal has been taken therefrom.

It follows, from this, that on April 27th, 1870, when the document now in controversy was signed, the payment of Armstrong's debt was not at all required for the purpose of placing the railroad extension under the control of the company clear of encumbrance. Armstrong had ceased to have any right, legal or equitable, which he could set up to defeat or delay the execution of that purpose, and, so far as any claim of his was concerned, the purpose was already accomplished before the subscription was made.

For this reason we think the complainant is not entitled to

call the defendant to account for the fund subscribed, in order that it may be applied to the payment of this debt.

The decree for an account should be reversed.

*Decree unanimously reversed.*